**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EDWARD TAYLOR, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-4811 |
| | § | |
| HARRY HARTLEY | § | JURY TRIAL DEMANDED |
| (in his individual capacity), and | § | |
| HARRIS COUNTY, TEXAS, | § | |
| *Defendants.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE _____ OF THE UNITED STATES DISTRICT COURT SITTING IN THE SOUTHERN DISTRICT OF TEXAS:

Plaintiff Edward Taylor ["Plaintiff"] respectfully comes before this Honorable Court complaining pursuant to 42 U.S.C. § 1983 that Defendants herein acted under color of state law and deprived him of his clearly established constitutional rights to remain free from the unreasonable use of excessive force; 42 U.S.C. § 12131 for violations of the Americans with Disabilities Act; and 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act) for discriminating against individuals with disabilities. In support thereof, Plaintiff specifically alleges the following:

**I.    SUMMARY**

1. Plaintiff was unconstitutionally subjected to unreasonable and excessive force by Harris County Sheriff's Officer Harry Hartley (hereinafter "Hartley").

2. Said patently unreasonable excessive force was recorded on the jail hallway video recorder.

3. Plaintiff was mentally ill, with the mental capacity of a 12-year-old before Hartley beat him resulting in injuries leaving Plaintiff with the mental capacity of a 4-year-old.

4. After Plaintiff responded to bullying comments from Hartley by attempting to strike Hartley, Hartley threw Plaintiff to the ground and struck him 15 times – 13 of which were after Plaintiff had gone unconscious.

5. Hartley lied in his offense report about the incident.

6. Hartley has a history of abusive behavior while employed with the Harris County Sheriff's Office ("HCSO").

1

7. Hartley's lack of discipline and failure to train has led to the excessive use of force, of which he was not adequately disciplined or trained either.

8. Hartley knew or should have known Plaintiff's mentally disabled state, yet discriminated against him when he beat Plaintiff in the face unconscious and beyond.

9. Defendant Harris County is subject to *Monell* liability herein due to its policy, procedure, custom, practice, or protocol of:

    a. inadequately training, supervising, and/or disciplining its officers concerning constitutionally reasonable de-escalation techniques, reasonable use of force techniques, and drafting and preparing use of force and other incident reports;

    b. shielding its officers from the consequences of illegal and/or improper conduct;

    c. permitting its officers to perform illegal and/or improper conduct; and

    d. ratifying officers' illegal and/or improper conduct.

## II.    <u>NATURE OF THE ACTION</u>

10. This suit arises under the Constitution of the United States (particularly the Fourth Amendment to the Bill of Rights) and 42 U.S.C. § 1983; 42 U.S.C. § 12131, 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act).

## III.    <u>DEMAND FOR JURY TRIAL</u>

11. Plaintiff respectfully demands a trial by jury.

## IV.    <u>PARTIES</u>

12. Plaintiff Edward Taylor is and was at all time relevant hereto a resident of Liberty County, Texas.

13. Defendant Harry Hartley, an officer with the HCSO, is being sued in his individual capacity and may be served at his place of work at 1200 Baker Street, Houston, Texas 77002.

14. Defendant Harris County, is being sued and may be served through County Judge Ed Emmett at 1001 Preston, Suite 911, Houston, Texas 77002.

## V.    <u>JURISDICTION AND VENUE</u>

15. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4) because Plaintiff's suit arises under 42 U.S.C. § 1983, 2 U.S.C. § 12131, 29 U.S.C. § 794(a) & 29 U.S.C. § 701 (§ 504 of the Rehabilitation Act).

16. Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas, Houston Division.

17. All conditions precedent have been performed or have occurred.

## VI.   SPECIFIC FACTS

18. Plaintiff was arrested for Assault at a hospital where he was receiving treatment for his disabilities.

19. That assault charge was subsequently no-billed by a grand jury, meaning the allegations did not have probable cause to formally charge Plaintiff.

### Plaintiff's disabilities

20. Prior to this incident, Plaintiff's had disabilities including epilepsy, lack of motor functions, speech impediments, brain damage/trauma, and mental illness.

21. Prior to this incident, Plaintiff's conditions substantially limited major life activities.

22. Prior to this incident, Plaintiff's conditions substantially limited his ability to care for himself, eat, sleep, speak, learn, read, concentrate, think, communicate, interact with others, work, and consortium activities.

23. Prior to this incident, Plaintiff's conditions caused headaches, confusion, memory problems, and nausea.

24. Prior to this incident, Plaintiff's conditions resulted in cognitive, behavioral, and physical disabilities.

25. Prior to this incident, Plaintiff's conditions substantially limited the operation of his immune, digestive, bowel, bladder, neurological, brain, and respiratory systems.

26. Plaintiff did and does suffer from disabilities that are protected under the Americans with Disabilities Act and Rehabilitation Act.

### Assault of Plaintiff by Hartley

27. On February 27, 2017, while being booked into Harris County Jail, Plaintiff was waiting in line with other inmates being processed into the jail.

28. While in line, it was obvious to all present that Plaintiff had mental health issues.

29. Other inmates observed that Hartley was being "mouthy" to all the inmates.

30. When Plaintiff's turn to be checked in and move into the court room for his initial appearance came up, Hartley yelled at Plaintiff to "take his gay ass hat off."

31. Feeling threatened, Plaintiff had a mental outburst and swung at Hartley.

32. Hartley caught Plaintiff's arm.

33. Hartley threw Plaintiff to the ground.

34. Hartley slammed Plaintiff's head into the concrete ground.

35. Hartley punched Plaintiff in the face 15 times.

36. Hartley continued to punch Plaintiff in the face after he went limp and unconscious after the second punch to Plaintiff's face.

37. Hartley only stopped punching Plaintiff because another officer pulled Hartley's arm away and off Plaintiff.

38. Video recordings from the jail hallway captured this incident.

39. At no point did Plaintiff resist arrest.

40. At no point did Plaintiff try to defend himself.

41. Other inmates viewing this incident agreed that the force was unnecessary and excessive.

42. An inmate described the incident as Hartley hammering on Plaintiff.

43. Other inmates were yelling at Hartley to stop because they though he was going to kill Hartley.

44. Hartley was attempting to kill Plaintiff.

45. Hartley's attempt to kill Plaintiff occurred after he was restrained.

46. Hartley's excessive use of force occurred after Plaintiff was restrained.

47. Hartley lied in the offense report regarding this incident by claiming that after he initially struck Plaintiff:

    a. Plaintiff rose up against Hartley;

    b. Plaintiff made attempts to continue to strike Hartley.

48. Every other witness to the incident reported that Plaintiff did not continue to rise up or resist, and that Plaintiff was unconscious.

49. Despite having readily available access to the video in this incident, Hartley chose to instead lie about the incident in an attempt to shield himself from liability.

50. Hartley also wrongfully claimed he punched Plaintiff 8-10 times, when the video shows he punched Plaintiff 15 times.

51. Hartley admitted that the only reason he stopped punching Plaintiff was because someone grabbed his arm.

52. Plaintiff was charged with assault on a public servant, which was dismissed.

53. Hartley was not charged with any crime nor disciplined in any way to Plaintiff's knowledge, despite Defendants being sent a demand letter and notice to preserve evidence.

**Plaintiff's Injuries and Medical Care**

54. After the incident with Hartley, Plaintiff was taken to a hospital and required surgery.

55. Due to the injuries cause by Hartley and Harris County, Plaintiff required a surgically inserted ventriculoperitoneal (VP) shunt, treatment for a Methicillin-resistant Staphylococcus (MRSA) infection, and surgical clipping of an aneurysm, among other medical care.

56. Plaintiff still requires the shunt.

57. Plaintiff has undergone extensive follow-up care and surgical procedures due to the injuries sustained as a result of the unconstitutional actions of Hartley and Harris County.

**Hartley's History of Abusive Behavior**

58. In April 2015 and January 2016, Hartley:

    a.  compromised the security of Harris County Jail;

    b.  failed to follow proper procedures in transporting and escorting inmates;

    c.  lied about violating policies and procedures; and

    d.  showed a pattern of repeated misconduct and neglect of duty.

59. In September 2015, Hartley:

    a.  made racially derogatory remarks to an inmate by stating that minority blacks and Mexicans fill the jail;

    b.  refused to complete job assignments such as distributing inmate mail;

    c.  used county computer equipment to watch movies while on duty;

    d.  refused to provide inmates grievance forms to complain of his wrongful actions;

    e.  was verbally aggressive in response to requests for him to complete his duties;

    f.  used tobacco products while on duty in the jail;

g.  refused to give out his supervisor's information when requested by inmates in a verbally aggressive manner;

h.  when requested to distribute medicine to inmates, told an inmate to "fuck yourself or die;"

i.  refused inmates medical treatment;

j.  referred to an African-American inmate as a "black ass;"

k.  watched videos of women on county computers in the jail while on duty; and

l.  stuck his middle finger at inmates trying to request medical attention.

60. In March 2016, Hartley was investigated multiple times for sleeping on the job.

61. In October 2016, it was found that Hartley:

a.  is offensive and vulgar and often makes sexual comments about female staff, making them uncomfortable;

b.  harasses, bullies and belittles co-workers;

c.  tells co-workers that he will "kick their fucking ass;"

d.  lies about policy violations against co-workers;

e.  in response to questioning about his actions, stated that he liked to make his co-workers sweat and piss them off because it "made his day;"

f.  made co-workers scared of working with or coming into contact with him;

g.  cussed out co-workers because of reassignment to another pod;

h.  caused co-workers to alter assignments, schedules, and shifts due to fear of him degrading them or physically assaulting them;

i.  threatened to spit in a co-worker's face;

j.  called a co-worker a "fucking bitch;"

k.  caused co-workers to feel harassed and un-safe at the Harris County Jail;

l.  disrespects his co-workers; and

m.  has serious anger issues.

62. Harris County failed to address these issues with Hartley by:

a.  ignoring complaints;

b.  assigning Hartley to shifts that his supervisors knew made his co-workers feel as though they were in a hostile work environment because of Hartley and his actions; and

    c.  allowing Hartley to ridicule his co-workers in front of staff and inmates without discipline.

## VII.   CAUSES OF ACTION

### COUNT 1 – 42 U.S.C. § 1983

### Hartley Violated Plaintiff's Fourth Amendment Rights to be Free from Excessive Force

63. The foregoing paragraphs are incorporated herein as if quoted verbatim.

64. On February 27, 2017, Plaintiff's constitutional right to remain free from the use of unreasonable and/or excessive force against his person by a peace officer acting under color of state law was:

    a.  secured to him by the Fourth Amendment of the United States;

    b.  clearly established within the Southern District of Texas; and

    c.  violated by Hartley.

65. Any and all objectively reasonable peace officers would know:

    a.  slamming a disabled man's head into a concrete ground carries the potential for lethal consequences;

    b.  punching a disabled man in the face 15 times carries with it the potential for lethal consequences;

    c.  lethal force should only be exercised when objective circumstances surrounding the exercise thereof would lead a reasonable peace officer to believe that such force was warranted; and

    d.  Plaintiff did not present a threat of any kind to anyone.

66. Any reasonable peace officer acting under the clearly established law of the Southern District of Texas and confronting the same or similar facts would know:

    a.  the Fourth Amendment to the United States Constitution prohibits objectively unreasonable uses of force in light of the facts and circumstances;

    b.  said prohibition is clearly established within the Southern District of Texas;

    c.  Plaintiff had not committed an act that would justify Hartley's assault thereon;

    d.  Hartley's slamming Plaintiff's head into the concrete floor carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances

    e.  Hartley's punching of Plaintiff in the face carried with it the great risk of harm or death and was thus objectively unreasonable in light of the facts and circumstances; and

    f.  Hartley's actions were clearly unreasonable in light of established law.

67. Hartley's use of force against Plaintiff:

    a.  was plainly incompetent;

    b.  knowingly violated the law;

    c.  intentionally violated the law;

    d.  was objectively unreasonable in light of clearly established law;

    e.  evidences an unreasonable misunderstanding of his powers and responsibilities; and

    f.  was the moving force behind the deprivation of Plaintiff's civil rights.

68. Plaintiff seeks punitive damages against Hartley because he:

    a.  knew at the time that the force he used to subdue Plaintiff was unreasonably excessive;

    b.  acted with conscious indifference to the possibility that Plaintiff would suffer egregious harm from his unreasonably excessive use of force;

    c.  acted with reckless and/or callous indifference to Plaintiff's federally protected rights;

    d.  recklessly trampled on Plaintiff's rights through plainly unlawful conduct;

    e.  was grossly negligent through his actions; and/or

    f.  fabricated evidence concerning this incident.

## COUNT 2 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of inadequately training, supervising, and/or disciplining its officers which was the moving force behind Plaintiff's injuries.

69. The foregoing paragraphs are incorporated herein as if quoted verbatim.

***70. Training regarding de-escalation techniques:***

8

a.  Hartley's actions throughout his encounter with Plaintiff unnecessarily and unreasonably escalated the situation into an unreasonable use of deadly force.

b.  De-escalation techniques are widely accepted and commonly used for officers across the state of Texas.

c.  These techniques not only avoid unnecessary uses of deadly force, but can reverse an increasingly tense situation and decrease the need to use any quantum of force.

d.  Hartley's actions unreasonably escalated the situation.

e.  Other aggressive actions in his history of abusive behavior, as dictated above, show a policy, procedure, custom, practice, or protocol of inadequate training, supervision, and/or discipline in the use of de-escalation techniques.

f.  Hartley's actions evidence his plainly inadequate training, supervision, and/or discipline by Harris County in the use of de-escalation techniques for officers.

g.  After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

**71. Training regarding reasonable use of force:**

a.  Hartley's actions evidence his inadequate training, supervision, and/or discipline under Harris County concerning reasonable uses of force.

b.  Other aggressive actions in his history of abusive behavior, as dictated above show a policy, procedure, custom, practice, or protocol of inadequate training, supervision, and/or discipline regarding reasonable use of force.

c.  After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

**72. Training regarding preparation, drafting, and/or submission of offense reports:**

a.  At this time, it is believed that no use of force report has been provided to Plaintiff or any counsel for Plaintiff.

b.  Discovery will show that Hartley was unreasonably inadequate and/or failed to properly prepare, draft or submit a use of force report.

c.  Skero's actions evidence an unreasonable lack of training, supervision, and/or discipline by Harris County for its officers concerning the proper preparation, drafting, and/or submission of offense reports.

    d.   Other aggressive actions in his history of abusive behavior, as dictated above show a policy, procedure, custom, practice, or protocol of inadequate training, supervision, and/or discipline regarding proper preparation, drafting, and/or submission of use of force and offense reports.

    e.   After a reasonable opportunity for discovery, more incidents will further evidence Harris County's liability under this cause of action.

73. Harris County's training, supervision, and/or discipline is inadequate as it allowed and/or facilitated its officer's fabrication of evidence.

74. Harris County has officially ratified, accepted, and approved Hartley's repeated actions as evidenced by its lack of response to Plaintiff's demand letter, its lack of action regarding this incident, and its lack of action concerning Hartley's aggressive actions in his history of abusive behavior, as dictated above.

75. Harris County's training, supervision, and/or discipline is inadequate as it lacks discipline for officers involved in wrongdoings such as Hartley's.

76. Harris County's failures were deliberately indifferent to the People's clearly established rights under the Fourth Amendment to the United States Constitution and were the moving force behind Plaintiff's injuries.

## COUNT 3 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of shielding its officers from the consequences of illegal and/or improper conduct.

77. The foregoing paragraphs are incorporated herein as if quoted verbatim.

78. At the date of this filing, it is believed that Hartley is still on-duty serving as a peace officer in Harris County.

79. Harris County has been made aware of the truth surrounding Hartley's actions.

80. Harris County knows, should know, or must know that Hartley fabricated evidence and has a pattern of fabricating evidence.

81. Harris County allowed Hartley to fabricate evidence in order to protect himself and to permit the county to avoid having a record of his unreasonable conduct.

82. Hartley and Harris County have previously engaged in such conduct without consequence.

83. Harris County has failed to discipline or even admit Hartley's actions were unreasonable.

84. Instead, Harris County ratifies, accepts, and approves Hartley's actions.

85. Specifically, Harris County failed to respond to Plaintiff's demand letter, evincing Harris County believes Hartley's actions were reasonable and that he was free from any wrongdoing.

86. Hartley's actions were ratified, shielded, and not adequately acted upon in other aggressive actions in his history of abusive behavior, as dictated above.

87. These failures to act show a policy, procedure, custom, practice, or protocol of Harris County shielding its officers (particularly Hartley) from consequences for their unreasonable uses of force.

88. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of shielding its officers from consequences of unreasonable uses of force.

## COUNT 4 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of permitting its officers to perform illegal and/or improper conduct.

89. The foregoing paragraphs are incorporated herein as if quoted verbatim.

90. At the date of this filing, it is believed that Hartley is still on-duty serving as a peace officer in Harris County.

91. Harris County has been made aware of the truth of Hartley's actions.

92. The video and other evidence show Hartley's use of deadly and other force was unreasonable, unlawful, wrongful, and grossly inappropriate.

93. Similar and other illegal and improper conduct from other aggressive actions in his history of abusive behavior, as dictated above show Hartley has a pattern of engaging in such conduct against the People.

94. Harris County has refused to adequately discipline or even admit Hartley's actions were unreasonable.

95. Instead, Harris County permits its officers to perform illegal and improper conduct such as Hartley's actions.

96. This failure to act shows a policy, procedure, custom, practice, or protocol of permitting officers (particularly Hartley) to use unjustifiable and unreasonable force without consequence.

97. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of permitting officers to use illegal and improper conduct.

## COUNT 5 – 42 U.S.C. § 1983

### Harris County has a policy, procedure, custom, practice, or protocol of ratifying officers' illegal and/or improper conduct.

98. The foregoing paragraphs are incorporated herein as if quoted verbatim.

99. Harris County ratifies, accepts, and approves of its officers' illegal and improper conduct such as Hartley's actions.

100. This ratification shows a policy, procedure, custom, practice, or protocol of approving officers (particularly Hartley) to use unjustifiable and unreasonable force.

101. After a reasonable opportunity for discovery, more incidents will further evidence Harris County's policy, procedure, custom, practice, or protocol of ratifying officers' illegal and improper conduct.

## COUNT 6 – 42 U.S.C. § 12131

### Harris County violated the Americans with Disabilities Act.

102. The foregoing paragraphs are incorporated herein as if quoted verbatim.

103. Plaintiff:

    a. was a person with a mental disability, as defined by the Americans with Disabilities Act at all times relevant hereto;

    b. had a mental disability which was open and plainly obvious to all persons who interacted with him (including Defendant Harris County and its personnel);

    c. exhibited his mental illness to such an extent that it gave Defendant and its personnel actual knowledge of the substantial potential harm that would befall him under the conditions in Harris County Jail caused by the actions of a jailer like Hartley;

d.  was especially vulnerable to the deleterious effects of the conditions in Harris County Jail caused by Hartley's unlawful actions;

e.  was entitled to be free from discrimination because of his disability under the Americans with Disabilities Act, 42 U.S.C. § 12131 et. seq.;

f.  was entitled to reasonable accommodations under the Americans with Disabilities Act, 42 U.S.C. § 12131 et. seq.; and

g.  was discriminated against by Harris County and its personnel due to his mental disability in that they did not appropriately accommodate him.

104. Congress:

a.  enacted the Americans with Disabilities Act upon finding (inter alia) that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." (42 U.S.C. § 12101(a)(2));

b.  explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." (42 U.S.C. § 12101(b)(l)-(2)); and,

c.  proclaimed "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132).

105. At all times relevant to this action, Harris County was a public entity within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

106. Defendant Harris County:

a.  had actual notice that Plaintiff had a mental disability, was vulnerable, and required an accommodation;

b.  knew Plaintiff was suffering from severe and abnormal mental, emotional, or physical distress at all times relevant hereto;

c.  knew Plaintiff was experiencing substantial mental or physical deterioration of his ability to function independently;

    d.   violated the Americans with Disabilities Act by intentionally discriminating against Plaintiff (and refusing and failing to accommodate him) on the basis of his disability;

    e.   treated Plaintiff in such a manner that evidences the fact that it arbitrarily singled him out for punishment on the basis of his mental disability, which affected his major life activities;

    f.   has not adopted policies and procedures to ensure its employees reasonably accommodated people with mental disabilities, such as Plaintiff's;

    g.   has not adopted policies and procedures to ensure its employees treat people with mental disabilities, such as Plaintiff's, in a non-discriminatory manner;

    h.   witnessed Plaintiff's obvious mental health needs before and upone entering Harris County Jail;

    i.   failed to take reasonable measures and accommodations to prevent harm being caused to Plaintiff;

    j.   punished Plaintiff for behavior which was clearly and unmistakably symptomatic of his deteriorating mental health;

    k.   acted with deliberate and callous indifference to said risk; and

    l.   failed and refused to accommodate Plaintiff's disability because of his disability.

107. Defendant's discriminatory acts and failures and refusals to accommodate Plaintiff include:

    a.   denial of access to benefits and services (*e.g.,* mental health care);

    b.   refusing to provide Plaintiff with mental health care;

    c.   refusing to provide Plaintiff with medical care; and

    d.   refusing to provide Plaintiff with a humane processing system.

108. Plaintiff required (*inter alia*) the following reasonable accommodations:

    a.   a system which ensured that Harris County received notice of his mental health/medical needs;

    b.   a system which attempted to discern his mental health needs immediately upon his interaction with county employees;

    c.  a system that ensured Harris County personnel who had actual notice of a detainee's mental health/medical needs conveyed those needs to Harris County personnel in a manner that appropriately addressed those needs;

    d.  proper mental health screening according to current professional standards;

    e.  doctors and medical professionals who ensured jail personnel were aware of detainees' mental health issues;

    f.  properly trained jail personnel who followed appropriate policies and procedures for detainees with mental health issues;

    g.  appropriate protective custody, when emergency situations are needed;

    h.  reasonable and appropriate mental health and medical care;

    i.  reasonable and appropriate monitoring and observation; and

    j.  reasonable, appropriate, and non-discriminatory responses to actions resulting from mental outbursts indicative of mental illness.

109. Defendant Harris County violated Title II of the ADA by:

    a.  excluding Plaintiff from participation in benefits and services provided to the other inmates by not accommodating his mental disability;

    b.  denying Plaintiff the benefits and services provided to the other inmates because of his mental disability;

    c.  subjecting Plaintiff to discrimination in the benefits and services provided to the other inmates because of his mental disability;

    d.  refusing to have a reasonable system in place which could assess his mental health/medical needs;

    e.  refusing to provide him with reasonable accommodations for his mental health/medical needs;

    f.  having an institutional culture which was so mismanaged and overwhelmed by the mental health needs of the population at the Harris County Jail that it could not adequately assess (much less treat and accommodate) Plaintiff's mental health/medical needs.

110. Defendant Harris County failed to provide its employees with appropriate training regarding:

    a.  detainees with mental disabilities;

b.  detainees' rights to reasonable accommodations if they had mental disabilities;

c.  adequate means of classifying detainees with mental health issues;

d.  adequate means of ensuring detainees with mental health issues will receive continued care as received when not in custody;

e.  how to acquire information from mental health care providers when detainees like Plaintiff are accepted into Defendant's custody;

f.  how to comply with doctors' directives concerning the mental health of detainees;

g.  how to recognize the signs that people in its custody like Plaintiff are suffering mental health episodes;

h.  how to handle people in its custody like Plaintiff who are suffering mental health episodes;

i.  Harris County's duties to provide reasonable accommodations under federal law; and

j.  the manner in which Defendants could provide people with Plaintiff's disabilities with reasonable accommodations.

111. Under the facts herein, Defendant Harris County:

a.  failed and refused to accommodate Plaintiff's severe disability;

b.  denied Plaintiff the benefits and services of a facility designed to accommodate his disability;

c.  knew or should have known that persons with Plaintiff's disabilities/condition(s) are especially vulnerable to the conditions created by the jailers in the Harris County Jail; and

d.  caused Plaintiff to suffer increased mental and physical harm that required treatment.

112. Due to the Plaintiff's disability, placement in the Harris County Jail's conditions created by the jailers caused him to suffer additional harm and cruel and unusual punishment.

113. As a proximate and foreseeable result of Defendants' discriminatory acts and omissions, Plaintiff suffered injuries including pain and suffering, emotional distress, and severe exacerbation of his disability.

114. While in the Harris County Jail's care and control:

     a.  Defendants failed and refused to provide Plaintiff with reasonable mental health care; and

     b.  Plaintiff's mental health seriously deteriorated.

115. As a proximate and foreseeable result of Defendants' conduct, Plaintiff suffered injuries including pain and suffering, emotional distress, and exacerbation of his disability/condition.

116. Discovery in this case will reveal more details and more evidence of discrimination by Harris County.

117. Plaintiff seeks all damages available to him against Harris County under the Americans with Disabilities Act.

### COUNT 7 – 29 U.S.C. § 794(a)

### Harris County violated § 504 of the Rehabilitation Act.

118. The foregoing paragraphs are incorporated herein as if quoted verbatim.

119. Section 504 states, "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a).

120. Defendant Harris County is publicly funded and the recipient of federal funding; therefore, it falls within the ambit of Section 504.

121. The Americans with Disabilities Act Amendments Act of 2008 (ADA AA) (P.L. 110-325) emphasizes that the definition of disability should be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA.

122. The ADA AA amended Section 504 so as to incorporate the ADA by reference.

123. Defendants' violations, as described above, violate Plaintiff's rights that are secured by Section 504, by discriminating against individuals with disabilities based on disability. 29 U.S.C. § 794.

124. All of the claims in "Count 5" above apply, are relevant to, and are incorporated into this count of violations of the Rehabilitation Act.

125. Discovery in this case will reveal more details and more evidence of discrimination by Harris County.

## VIII.   **DAMAGES**

126. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries and damages.

127. Plaintiff therefore seeks compensatory damages (including legal fees, lost future earnings, lost wages, and mental and emotional distress), presumed damages, nominal damages, and punitive damages.

## IX.   **ATTORNEY FEES**

128. After prevailing herein, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b).

## X.   **PRAYER**

129. For these reasons, Plaintiff asks for judgment against Defendant for the following:

    (a)    compensatory damages;

    (b)    presumed damages;

    (c)    nominal damages;

    (d)    punitive damages;

    (e)    reasonable attorney fees;

    (f)    costs of suit; and

    (g)    all other relief to which Plaintiff shows himself entitled, both at law and in equity.

Respectfully submitted,

By:*/s/ Drew Willey*
    Drew Willey
    SBN: 24093371
    P.O. Box 2813
    Houston, Texas 77252
    713-739-9455 (p)
    713-510-1950 (f)
    drew@law-dw.com
    ATTORNEY FOR PLAINTIFF